**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
JEANNE A. NAUGHTON, CLERK

In Re:

CORNELIUS STEPHENS

Chapter 13

Case No. 20-14850 (ABA)

**RESPONSE TO OBJECTION OF DEBTOR'S**
**REQUEST TO PARTICIPATE IN LOSS MITIGATION PROGRAM**

CORNELIS STEPHENS, Debtor ("Debtor"), submit this response to the Objection of Denise Carlon Esquire For KML Law Group, P.C., attorney for Secured Creditor CastleRock Realty Group, dated and file May 12, 2020.

1. The basis for counsel's objection is that Debtor, does not qualify for participation in the loss mitigation program because the program guidelines requires Debtor's loan to be a mortgage, lien, or extension of money secured by property; and, although Debtor's loan originally was a real estate installment agreement, by virtue of Debtor's default of the terms of the agreement, Clause 9 of the agreement, titled "Default Conversion to Month to Month Tenancy," automatically converted real estate installment agreement to a lease agreement, which also converted Debtor's interest in the subject premises from a mortgagor to a tenant. Therefore, as a tenant, Debtor has no ownership interest to be eligible for participation in the loss mitigation program. See "Land Contract/Contract for Deed" annexed hereto and made an exhibit thereof.

2. Counsel's objection, as a matter of law, should be overruled for several reasons:

a. Clause 9 of the agreement is unenforceable on the grounds of Public Policy. The installment agreement is governed by The "Real Estate Installment Contract Act" of the State of New Jersey, and Clause 9 constitutes a waiver of any rights or remedies Debtor may have thereunder. Clause 9 also poses irreparable harm to both Debtor and society as a whole. Here the Creditor is relaying on Clause 9 in their efforts to deprive Debtor of his property rights and the remedies afforded by the loss mitigation program.

b. The "Real Estate Installment Contract Act" does not permit Debtor, who has entered into a real

1

estate installment contract as a mortgagor, to waive any rights or remedies thereunder, or to subsequently have his property interest coverted to that of a tenant because of a monitory default. The "Real Estate Installment Contract Act", Section 4(b) states in no uncertainties that,

> "If, in any action commenced in Superior Court to enforce the terms of a contract, the seller demands forfeiture of the interest of the purchaser in the property, the action shall be deemed to be one in the nature of a strict foreclosure of a mortgage encumbering real property, in which case the seller shall be deemed to be the mortgagee and the purchaser shall be deemed to be the mortgagor."

c. Finally, in In Re Angie Curtis, USBC, ND Alabama, Case No. 13-40997 (2013)(JJR), the court was confronted with a case involving an installment agreement in which the terms of the agreement were identical to the terms presented here, and which also addressed the issue which counsel is eluding in this case. The court concluded that based the language and structure of the agreement, in a bankruptcy the agreement would not be treated as an executory contract (lease) but would rather be treated as a mortgage.

**WHEREFORE,** based on the foregoing, Debtor respectfully request your Honor enter an order overruling counsels objection, and further issue an order granting Debtor's request to participate in loss mitigation program.

Dated: May 28, 2020.

Respectfully submitted,

Cornelius Stephens, Debtor
33 Main Street
Pennsville NJ 08070
(856) 275-4731
csbankruptcy2020@gmail.com

2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:                                                    Chapter 13

     CORNELIUS STEPHENS                        Case No. 20-14850 (ABA)

**CERTIFICATE OF SERVICE**

    I, Cornelius Stephens, Debtor, hereby certify that I served a true and correct coy of the Response to Denise Carlon Esquire For KML Law Group, P.C., attorney for Secured Creditor CastleRock Realty Group, Objection to Debtor's request to participate in loss mitigation program by United States Mail Service, first class, with postage prepaid, and/or by Electronic Mail on May 29, 2020, upon the following parties:

Denise Carlon Esquire
For KML Law Group, P.C.
701 Market Street, Suite 5000
Philadelphia PA 19106

Isabel C. Balboa
Chapter 13 Standing Trustee
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, NJ 08002

Dated: May 28, 2020

FILED
JEANNE A. NAUGHTON, CLERK
MAY 2 9 2020
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY _____ DEPUTY

Cornelius Stephens, Debtor
33 Main Street
Pennsville NJ 08070
(856) 275-4731
csbankruptcy2020@gmail.com



**Cornelius Stephens,**

**Congratulations on the purchase of your new home 33 Main St, Pennsville, NJ 08070!**

**Total Monthly Payment: $789.76**
**Monthly Payment Breakdown:**   $253.98 Monthly Loan Payment
+ $505.78 Monthly Tax Payment
+ $30 Monthly Insurance Payment
$789.76 Total Monthly Payment

Below is the list of items you will need to do before and after you move into your new home;

**Items to take care of before you move into your new home:**

1. Sign all documents in all the spaces provided make sure all parties sign. Please have the document notarized where required.
2. Documents and payment must be received within 7 days!
3. FedEx back the documents, down payment and 1st months' payment to **CastleRock 2017 LLC** at the address below. The down payment and 1st month's payment must be in the form of money order or bank check. Personal checks will not be accepted.
4. You have 30 days to get insurance and send a copy of the insurance binder. When you receive the executed copy of the Land Contract, bring to your insurance company and have agent follow page insurance requirements noted. Reference page 3 and 4; Section 8 of the contract- TAXES, INSURANCE, UTILITIES AND ASSESSMENTS.

**Details of your 1st payment**
**Down Payment**        $1,200.00
**September 1st Payment**       $789.76 ($253.98 + $505.78 + $30)
**Total**           $1,989.76

**$1,989.76 must be included with your signed documents!**

**Items to take care of after you move into your new home:**

1. Call the Water and Sewer companies; turn on the water and sewer in your name. Make sure they have the right mailing address to send the bills. Please pay your bills on time!
2. Check to see if repairs such as fixing leaks are needed right away.
3. Call the electric and gas companies to turn on service.
4. Turn on phone and cable if desired.
5. You must have insurance coverage on the property at all times.
6. **All monthly payments are due on the 1st of the month. If we do not receive payment by the 5th of the month there will be a $35 late fee.**
7. **Down payment and 1st month's payment are to be mailed to Castlerock's address below. You will receive a welcome package within 21 days.*If you do not receive your welcome package within 21 days, please contact CastleRock CFD Group (866) 898-6233.**

Castle Rock REO
333 Westchester Ave
West Building Suite W2100
White Plains, NY 10604



### *LAND CONTRACT /CONTRACT FOR DEED*

ON THIS DAY, July 19, 2018, this agreement is entered into by and between **CastleRock 2017 LLC,** hereinafter referred to as "SELLER", whether one or more, and **Cornelius Stephens** ,hereinafter referred to as "PURCHASER", whether one or more, on the terms and conditions and for the purposes hereinafter set forth:

**1.**
### SALE OF PROPERTY

For and in consideration of **Twenty-Seven Thousand Seven Hundred Dollars ($27,700.00)** and other good and valuable considerations the receipt and sufficiency of which is hereby acknowledged, Seller does hereby agree to convey, sell, assign, transfer and set over unto Purchaser, the following property situated at **33 Main St, Pennsville, NJ 08070, Salem County** hereinafter referred to as "The Property" being described as follows: *(Type description or attach description as exhibit "A")*
**33 Main St, Pennsville, NJ 08070, Salem County**

**Parcel:** See Attached Amendment

**Legal Description:** See Attached Amendment

Together with all rights of ownership associated with the property, including, but not limited to, all easements and rights benefiting the premises, whether or not such easements and rights are of record, and all tenements, hereditaments, improvements and appurtenances, including all lighting fixtures, plumbing fixtures, shades, venetian blinds, curtain rods, storm windows, storm doors, screens, awnings, if any, now on the premises.

SUBJECT TO all recorded easements, rights-of-way, conditions, encumbrances and limitations and to all applicable building and use restrictions, zoning laws and ordinances, if any, affecting the property.

**2.**
### PURCHASE PRICE AND TERMS

The purchase price of the property shall be **$27,700.00.** The purchaser does hereby agree to pay to the order of the Seller the sum of **One Thousand Two Hundred Dollars ($1,200.00)** upon execution of this agreement, with the principal balance of **$26,500** being due and payable as follows.

**Balance payable, together with interest on the whole sum that shall be from time to time unpaid at the rate of 9.9% per cent, per annum, payable in the amount of $253.98 dollars per month beginning on the 1st day of September, 2018 and continuing on the same day of each month thereafter and ending on the 1st day of August, 2038. Interest shall be computed monthly and deducted from payment and the balance of payment shall be applied to principal.**

Initials      Purchaser                                Seller

- 1 -
Contract for Deed

**3.**
## TIME OF THE ESSENCE

Time is of the essence in the performance of each and every term and provision in this agreement by Purchaser.

**4.**
## SECURITY

This contract shall stand as security of the payment of the obligations of Purchaser.

**5.**
## MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a part of the security for the performance of this contract and shall not be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

**6.**
## CONDITION OF IMPROVEMENTS

Purchaser agrees that the Seller has not made, nor makes any representations or warranties as to the condition of the premises, the condition of the buildings, appurtenances and fixtures locate thereon, and/or the location of the boundaries. Purchaser accepts the property in its **"as-is" and "where is" condition** without warranty of any kind.

**7.**
## POSSESSION AND MAINTENANCE OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon execution of this contract and shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract; Purchaser agrees to return the property to Seller in substantially the same condition as it now exists. Seller reserves the right to inspect the property at any time with 24 hour notice to Purchaser. **Purchaser is responsible for all costs associated with repairs and maintenance of the property including trash removal and grounds maintenance.**

Initials      Purchaser _____      Seller _____

- 2 -

Contract for Deed

8.
## TAXES, INSURANCE, UTILITIES AND ASSESSMENTS

**Taxes and Assessments:** During the term of this contract all taxes and assessments levied against the property shall be the responsibility of the purchaser. **Seller and Purchaser acknowledge that failure to comply with this provision constitutes an event of default entitling Seller to convert Purchaser to a month to month tenant (see below Default, Conversion to Month to Month Tenancy).**

**It is required that the structures be covered by insurance at all times. This insurance, commonly known as "homeowner's" or "hazard" insurance, protects you and the note-holder in the event of loss or damage to your home.**

**Homeowner's insurance generally does not cover loss from water, hail, wind, earthquake or flood. Your agent can advise you if coverage for these perils is recommended for your home. Special conditions also apply to condominiums – your lender will advise you if this is the case.**

**YOU are required to carry a policy in an amount equal to the principal balance or replacement value, whichever is LESS. This policy must name your note-holder as an additional insured, with the following loss payee clause:**

**YOU are required to provide proof of coverage at least annually.**

**YOU are required to pay for the first year. Renewals can be paid from your escrow account, as applicable.**

**YOU have the right to choose your own insurance provider, subject to any requirements detailed in your Contract for Deed.**

**If you fail to obtain and/or maintain coverage, the note-holder has the right to obtain coverage at YOUR expense. This coverage, known as "Lender-placed" or "Force-placed" insurance, is generally more expensive, has higher deductibles and does not cover your equity and/or possessions. In the event of a loss, YOU will have to cover all repair costs after the deductible is applied, which may be the FULL cost of the repair. Premiums for this coverage will be paid from your escrow account and can result in higher monthly payments.**

**Lender-placed coverage will begin from the date of your Contract for Deed. Once your proof of insurance coverage has been received, the lender-placed coverage will cease effective with your policy start date and any excess premiums paid refunded to your escrow account.**

In case of any damage as a result of which said insurance proceeds are available, the Purchaser may, within sixty (60) days of said loss or damage, give to the Seller written notice of Purchaser's election to repair or rebuild the damaged parts of the premises, in which event said insurance proceeds shall be used for such purpose. The balance of said proceeds, if any, which remain after completion of said

Initials      Purchaser _____            Seller _____

- 3 -
Contract for Deed

repairing or rebuilding, or all of said insurance proceeds if the Purchaser elects not to repair or rebuild, shall be applied first toward the satisfaction of any existing defaults under the terms of this contract, and then as a prepayment upon the principal balance owing. No such prepayment shall defer the time for payment of any remaining payments required by said contract. Any surplus of said proceeds in excess of the balance owing hereon shall be paid to the Purchaser.

**Escrow** - Borrower shall pay to Seller, or Seller's designated Servicer, on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Seller. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Seller may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Seller/Servicer all notices of amounts to be paid under this Section Seller, or Seller's designated Servicer, may, at any time, collect and hold Funds in an amount (a) sufficient to permit Seller/Servicer to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a Seller/Servicer can require under RESPA. Seller/Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Seller, if Seller is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Seller/Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Seller/Servicer shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Seller pays Borrower interest on the Funds and Applicable Law permits Seller/Servicer to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Seller shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Seller can agree in writing, however, that interest shall be paid on the Funds. Seller/Servicer shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Seller/Servicer shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Seller/Servicer shall notify Borrower as required by RESPA, and Borrower shall pay to Seller/Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Seller/Servicer shall notify Borrower as required by RESPA, and Borrower shall pay to Seller/Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments. Upon payment in full of all

Initials     Purchaser _____     Seller _____

- 4 -

Contract for Deed

sums secured by this Security Instrument, Seller/Servicer shall promptly refund to Borrower any Funds held by Seller/Servicer.

**UTILITIES: Purchaser is responsible for paying for all utilities associated with the property, which includes but is not limited to Water, Sewer (if separate from water) Natural Gas, Oil, Electric, Propane, Telephone and Cable Television.**

## 9.
## DEFAULT, CONVERSION TO MONTH TO MONTH TENANCY

If the Purchaser shall fail to perform any of the covenants or conditions contained in this contract on or before the date on which the performance is required, the Seller shall give Purchaser notice of default or performance, stating the Purchaser is allowed fourteen (14) days from the date of the Notice to cure the default or performance. In the event the default or failure of performance is not cured within the 14 day time period, then Purchaser's rights to the property will terminate and the Purchaser will automatically be converted to a "month to month tenant. The purchaser now known as "Tenant" (and the Seller now known as Landlord) agrees to peacefully surrender The Property to the Landlord in good condition within 15 days of conversion. The Tenant will pay the Landlord rent in an amount equal to 100% of the amount of the payment in the promissory Note. The Tenant acknowledges that the landlord will initiate an action to evict the Tenant when any rent is more than 15 days late. If Tenant does not peacefully surrender the Property upon request from The Landlord, it will be lawful for The Landlord to enter upon and take possession of the Property with 24 hour notice and remove all persons and their personal property subject to local laws. All amounts paid by the Tenant and all improvements constructed in or upon the Property will be retained by the Landlord as compensation for the use and occupancy of the Property by the Tenant. The Provisions made for forfeiture in this contract are an attempt to estimate the actual damage to the Landlord in the event of default by the Tenant and both parties hereto agree that these forfeitures are reasonable and are not a penalty.

## 10.
## DEED AND EVIDENCE OF TITLE

If Purchaser shall, in the time and manner above specified make all the payments, observe and perform all covenants and conditions herein made and herein provided, Seller shall thereupon, at Purchaser's Expense, by Special or limited Warranty Deed, convey the Property to Purchaser on the conditions herein agreed. All closing costs shall be paid for by the purchaser. The Deed shall be limited so as to except acts of negligence of parties other than Seller subsequent to the date of this Contract. In any event, Purchaser hereby agrees to hold Seller harmless for any acts or negligence of parties other than Seller subsequent to the date of this Contract. Except for costs resulting from acts, negligence, or death of Seller all cost of additional evidence of title shall be the obligation of Purchaser. Seller shall not warrant any Deed from liens or encumbrances that exist on the property.

## 11.
## NOTICES

Initials        Purchaser                                    Seller

- 5 -
Contract for Deed

All notices required hereunder shall be deemed to have been made when deposited in the U. S. Mail, postage prepaid, certified, return receipt requested, to the Purchaser or Seller at the addresses listed below. All notices required hereunder may be sent to:

**Seller:**
**CastleRock 2017 LLC**
**333 Westchester Ave, West Building Suite W2100**
**White Plains, NY 10604**

**Purchaser:**
**Cornelius Stephens**
**311 N 5th Avenue**
**Lebanon, PA**

and when mailed, postage prepaid, to said address, shall be binding and conclusively presumed to be served upon said parties respectively.

## 12.
## ASSIGNMENT OR SALE

Purchaser shall not sell, assign, transfer or convey any interest in the subject property or this agreement, without first securing the written consent of the Seller.

## 13.
## ATTORNEY FEES

In the event of default, Purchaser shall pay to Seller, Seller's reasonable and actual attorneys' fees and expenses incurred by Seller in enforcement of any rights of Seller. All attorney fees shall be payable prior to Purchaser's being deemed to have corrected any such default.

## 14.
## FEES

Payments received after the 5th of the month-$35 Late Fee
Returned checks, NSF Fee-$35 NSF Fee
**If the buyer incurs the above fees, all monthly payments will be first applied to late fees and NSF fees, then to interest, then to principal.**

## 15.
## CONVEYANCE OR MORTGAGE BY SELLER

If the Seller's interest is now or hereafter encumbered by mortgage, the Seller covenants that Seller will meet the payments of principal and interest thereon as they mature and produce evidence thereof to the Purchaser upon demand. In the event the Seller shall default upon any such mortgage or land contract, the Purchaser shall have the right to do the acts or make the payments necessary to cure such default and shall be reimbursed for so doing by receiving, automatically, credit to this contract to

Initials      Purchaser _____          Seller _____

apply on the payments due or to become due hereon.

The Seller reserves the right to convey, his or her interest in the above described Land Contract/Contract for Deed and such conveyance hereof shall not be a cause for rescission but such conveyance shall be subject to the terms of this agreement.

The Seller may, during the lifetime of this contract, place a mortgage on the premises above described, which shall be a lien on the premises, superior to the rights of the Purchaser herein, or may continue and renew any existing mortgage thereon, provided that the aggregate amount due on all outstanding mortgages shall not at any time be greater than the unpaid balance of the contract.

## 16.
## ENTIRE AGREEMENT

This Agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein. All prior or contemporaneous agreements, understandings, representations, oral or written, are merged into this Agreement.
**Buyer is prohibited from recording this Land Contract/Contract For Deed on the County or City records unless seller has authorized buyer in writing to do so.**

## 17.
## AMENDMENT - WAIVERS

This Agreement shall not be modified, or amended except by an instrument in writing signed by all parties.

No delay or failure on the part of any party hereto in exercising any right, power or privilege under this Agreement or under any other documents furnished in connection with or pursuant to this Agreement shall impair any such right, power or privilege or be construed as a waiver of any default or any acquiescence therein. No single or partial exercise of any such right, power or privilege shall preclude the further exercise of such right, power or privilege, or the exercise of any other right, power or privilege. No waiver shall be valid against any party hereto unless made in writing and signed by the party against whom enforcement of such waiver is sought and then only to the extent expressly specified therein.

## 18.
## SEVERABILITY

If any one or more of the provisions contained in this Agreement shall be held illegal or unenforceable by a court, no other provisions shall be affected by this holding. The parties intend that in the event one or more provisions of this agreement are declared invalid or unenforceable, the remaining provisions shall remain enforceable and this agreement shall be interpreted by a Court in favor of survival of all remaining provisions.

## 19.

Initials    Purchaser _____    Seller _____

- 7 -
Contract for Deed

## INDEMNIFICATION

Purchaser agrees to indemnify and hold harmless Seller and its agents from and against any and all losses, claims, demands, liabilities, costs, damages, and expenses (including attorneys fees and costs) that Seller may incur arising from Purchasers actions or failure to act on, respond to or comply with any local, state, or federal law, rule or ordinance affecting the Property including but not limited to, building code requirements, nuisance claims or abatements thereof, condemnation proceedings, lien enforcement actions, and the like. Further, Purchaser acknowledges that the property may be subject to proceedings in law or equity to abate, correct, or otherwise comply with local, state, or federal requirements regarding the Property and that this indemnity also will apply in such instance. Purchaser further agrees to indemnify and hold harmless Seller and its agents from and against any and all losses, claims, demands, liabilities, costs, damages, and expenses (including attorney's fees and costs) that Seller may incur arising from Purchasers actions or failure to act in any matter involving a tort claim arising from buyers use of the Property.

### 20.
## PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular, or plural, as the identity of the person or entity may require. As used in this agreement: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (2) words in the singular shall mean and include the plural and vice versa, and (3) the word "may" gives sole discretion without any obligation to take any action

### 21
## JOINT AND SEVERAL LIABILITY

All Purchasers, if more than one, covenants and agrees that their obligations and liability shall be joint and several.

### 22
## PURCHASER'S RIGHT TO REINSTATE AFTER ACCELERATION

If Purchaser defaults and the loan is accelerated, then Purchaser shall have the right of reinstatement as allowed under the laws of the State in which the property is located, provided that Purchaser: (a) pays Seller all sums which then would be due under this agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; and (c) pays all expenses incurred in enforcing this agreement, including, but not limited to, reasonable attorneys' fees, and other fees incurred for the purpose of protecting Seller's interest in the Property and rights under this agreement. Seller may require that Purchaser pay such reinstatement sums and expenses in one or more of the following forms, as selected by Seller: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Purchaser, this Security Instrument and obligations secured hereby

Initials        Purchaser                                    Seller
- 8 -
Contract for Deed

shall remain fully effective as if no acceleration had occurred.

### 23
### HEIRS AND ASSIGNS

This contract shall be binding upon and to the benefit of the heirs, administrators, executors, and assigns of the parties hereto. However, nothing herein shall authorize a transfer in violation of paragraph (12).

Initials          Purchaser                                    Seller

## LEGAL DESCRIPTION

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF MAIN STREET (50 FEET WIDE) AT THE EASTERLY CORNER OF LOT 2, AS SHOWN ON THE OFFICIAL ASSESSMENT MAP OF THE TOWNSHIP OF PENNSVILLE, SAID POINT BEING SOUTH 57 DEGREES 53 MINUTES EAST, 80.77 FEET FROM THE INTERSECTION OF THE SAID LINE OF MAIN STREET WITH THE SAID LINE OF MAIN STREET WITH THE SOUTHEASTERLY LINE OF LINCOLN STREET, AND FROM SAID BEGINNING POINT RUNS:

1. ALONG THE SOUTHWESTERLY LINE OF MAIN STREET 57 DEGREES 53 MINUTES EAST, 40.0 FEET TO A POINT FOR A CORNER, SAID POINT BEING THE NORTHERLY CORNER OF LOT 5; THENCE

2. ALONG THE NORTHWESTERLY LINE OF LOT 5, SOUTH 32 DEGREES 20 MINUTES 05 SECONDS WEST, 213.09 FEET TO A FIELD STONE FOUND IN THE NORTHEASTERLY LINE OF LOT 27; THENCE ~

3. ALONG THE NORTHEASTERLY LINE OF LOTS 27 AND 28, NORTH 56 DEGREES 01 MINUTES 40 SECONDS WEST, 41.88 FEET TO A 2 INCH PIPE FOUND AT THE SOUTHERLY CORNER OF LOT 2; THENCE

4. ALONG THE SOUTHEASTERLY LINE OF LOT 2, NORTH 32 DEGREES 50 MINUTES 20 SECONDS EAST, 211.75 FEET TO THE PLACE OF BEGINNING.

THE AFORESAID METES AND BOUNDS DESCRIPTION IS PART OF THE AFORESAID RECORDED MORTGAGE.

Tax ID: 02803.0000 00003.0000

Buyer_____            Seller_____

# Addendum

**Re: 33 Main St, Pennsville, NJ 08070**

Seller, CastleRock 2017 LLC, approves a payoff discount in the amount of $22,000.00 (principal only) if buyer, Cornelius Stephens, pays off the note before August 31, 2019.

If buyer, Cornelius Stephens, does not pay off the note by August 31st, 2019, the seller, CastleRock 2017 LLC, approves a discounted payoff of $25,000.00 (principal only) if paid between September 1, 2019 and August 31, 2020.

Buyer_____

Seller_____

WITNESS THE SIGNATURES of the Parties this the _24th_ day of, _July_ 2018.

_Cornelius Stephens_ (signature)

**Cornelius Stephens**   **(Purchaser)**

**CastleRock 2017 LLC**   **(Seller)**
**Victor Naar, Manager**

STATE
OF   _New Jersey_

COUNTY
OF   _Salem_

The foregoing instrument was acknowledged before me this _23rd_ day of, _July_ 2018.
by **Cornelius Stephens**

TONY M. DeANGELO
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50068189
Notary Public My Commission Expires 9/15/2022

Printed Name: _Tony M. DeAngelo_

My Commission expires:

_____

Initials   Purchaser _____   Seller _____

- 10 -
Contract for Deed

## PROMISSORY NOTE
### 08/01/2018
### 33 Main St
### PENNSVILLE, NJ 08070

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I (we) ( **Cornelius Stephens** ) "Borrower", have received, I (we) promise to pay U.S. **$26,500** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CastleRock 2017 LLC.** I (we) will make all payments under this Note in the form of cash, check or money order.

   I (we) understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I (we) will pay interest at a yearly rate of **9.9%**

   The interest rate required by this Section 2 is the rate I (we) will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**

   **(A) Time and Place of Payments**

   I (we) will pay principal and interest by making a payment every month.

   I (we) will make my monthly payment on the **1st day of each month** beginning on **September 01, 2018.** I (we) will make these payments every month until I (we) have paid all of the principal and interest and any other charges described below that I (we) may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 01, 2038** , I (we) still owe amounts under this Note, I (we) will pay those amounts in full on that date, which is called the "Maturity Date." I (we) will make my monthly payments at **333 Westchester Ave, West Building Suite W2100 White Plains, NY 10604** or at a different place if required by the Note Holder.

   **(B) Amount of Monthly Payments**

   My monthly payment will be in the amount of U.S. $253.98

4. **BORROWER'S RIGHT TO PREPAY**

   I (we) have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment.". When I (we) make a Prepayment, I (we) will tell the Note Holder in writing that I (we) am doing so. I (we) may not designate a payment as a Prepayment if I (we) have not made all the monthly payments due under the Note. I (we) may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I (we) owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount,

before applying my Prepayment to reduce the Principal amount of the Note. If I (we) make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I (we) owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 5 calendar days after the date it is due, I (we) will pay a late charge to the Note Holder. The amount of the charge will be $35.00. I (we) will pay this late charge promptly but only once on each late payment. **All payments collected will be applied first to late fees, then to interest, then to principal.**

**(B) Default**

If I (we) do not pay the full amount of each monthly payment on the date it is due, I (we) will be in default.

**(C) Notice of Default**

If I (we) am in default, the Note Holder may send me a written notice telling me that if I (we) do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I (we) owe on that amount. That date must be at least 15 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I (we) am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I (we) am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above

MULTISTATE FIXED RATE NOTE –Single Family– Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    From 3200    1/01 ( page 2 of 4 pages)

or at a different address if I (we) give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I (we) am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person, who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

I (we) and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I (we) do not keep the promises which I (we) make in this Note. That Security Instrument describes how and under what conditions I (we) may be required to make immediate payment in full of all amounts I (we) owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Cornelius Stephens - Borrower

Notary Public Signature

(SEAL)

*Notary must notarize all signatures

MULTISTATE FIXED RATE NOTE —Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200    1/01 ( page 4 of 4 pages)

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (MADE IN COMPLIANCE WITH FEDERAL LAW)

Lender:   CastleRock 2017 LLC   333 Westchester Ave, West Building Suite W2100, White Plains, NY 10604

Date:   08/01/2018

Borrower(s):   Cornelius Stephens

Borrower Address: 311 N 5th Avenue, Lebanon, PA

Property Address: 33 Main St, Pennsville, NJ 08070

[ ] Initial Disclosure estimated at time of application      [X] Final Disclosure on contract terms

| ANNUAL PERCENTAGE RATE The cost of your credit as yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you assuming the annual percentage rate does not change. | Amount Financed The amount of credit provided to you or on your behalf as of loan closing. | Total of Payments The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
|---|---|---|---|
| 9.900% | $34,453.12 | $26,500.00 | $60,953.12 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 240 | $253.98 | 09/01/2018 | | | |

*Includes mortgage insurance premiums, excludes taxes, hazard or flood insurance.

[ ] DEMAND FEATURE:  This loan transaction has a demand feature.

[ ] VARIABLE RATE FEATURE:  Your loan contains a Variable Rate Feature.  Disclosure about the Variable Rate Feature have been provided to you earlier.

SECURITY INTEREST:  You are giving a security interest in:
(X) the goods or property being purchased.  ( ) real property you already own.

FILING OR RECORDING FEES $

LATE CHARGE:  If a payment is more than 5 day(s) late, you will be charged            $35

PREPAYMENT:  If you pay off you loan early, you
() may      (X) will not   have to pay a penalty
() may      (X) will not   be entitled to a refund of part of the finance charge.

INSURANCE:    Credit life, accident, health or loss of income insurance is not required in connection with this loan.
This loan transaction requires the following insurance:
(X) Hazard Insurance      () Flood Insurance            () Private Mortgage Insurance
() Mutual Mortgage Insurance
Borrower(s) may obtain insurance through any person of his/her choice, provided said carrier meets the requirements fo the Lender.  If Borrower desires Property Insurance to be obtained through the Lender's designated agency, the cost will be set forth in a separate insurance statement furnished by the Lender.

ASSUMPTION:    Someone buying your house
() may      (X) may, subject to conditions.      () may not assume the remainder of your loan on the original terms

See your contract documents for additional information regarding nonpayment, default, right to accelerate the maturity of the obligation, prepayment rebates and penalties, and the Lender's policy regarding assumption of the obligation

() all dates and numerical disclosures except late payment disclosures are estimates.   means an estimate

*The undersigned hereby acknowledge receiving and reading a completed copy of this disclosure along with copies of the documents provided.  The delivery and signing of this disclosure does not constitute an obligation on the part of the lender to make, or the Borrower(s) to accept, the loan as identified.

Read, acknowledeged and accepted this day.

_____
Cornelius Stephens

**A. Settlement Statement**

U.S. Department of Housing and Urban Development

| B. Type of Loan | | | | | 6. File Number | 7. Loan Number | 8. Mortgage Insurance case number |
|---|---|---|---|---|---|---|---|
| 1 | FHA | 2 | FmHA | 3 x Conv. Unis. | 0 | 0 | |
| 4 | VA | 5 x | Conven Ins. | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in totals.

**D.** Name and address of borrower:    Cornelius Stephens
311 N 5th Avenue, Lebanon, PA

**E.** Name and address of seller:    CastleRock 2017 LLC
333 Westchester Ave, West Building Suite W2100, White Plains, NY 10604

**F.** Name and address of lender:    CastleRock 2017 LLC
333 Westchester Ave, West Building Suite W2100, White Plains, NY 10604

**G.** Property location:    33 Main St, Pennsville, NJ 08070

**H.** Settlement agent:    CastleRock 2017 LLC
    Place of settlement:    333 Westchester Ave, West Building Suite W2100, White Plains, NY 10604

**I.** Settlement date:

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | $27,700.00 | 401. Contract sales price | $27,700.00 |
| 102. Personal property | | 402. Personal property | 0.00 |
| 103. Settlement charges to borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. Cy/Tn Tx      to | | 406. Cy/Tn Tx      to | |
| 107. Co Tx      to | | 407. Co Tx      to | |
| 108. Assess      to | | 408. Assess      to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | $27,700.00 | **420. GROSS AMOUNT DUE TO SELLER** | $27,700.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | $1,200.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $0 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Owner Financed Mortgage | $26,500 | 504. Payoff of first mortgage loan | |
| 205. Second Mortgage | 0.00 | 505. Payoff of second mortgage loan | |
| 206. Closing costs | 0.00 | 506. Deposit or earnest money | $1,200.00 |
| 207. | | 507. Owner Financed Mortgage | $26,500 |
| 208. | | 508. Second Mortgage | $0 |
| 209. | | 509. Closing Costs | $0 |
| *Adjustments for items unpaid by seller:* | | *Adjustment for items unpaid seller:* | |
| 210. Cy/Tn Tx  to | | 510. Cy/Tn Tx  to | |
| 211. Co Tx      to | | 511. Co Tx      to | |
| 212. Assess      to | | 512. Assess      to | |
| 213. Revenue Stamps | | 513. Revenue Stamps | |
| 214. | | 514. Tax Parcel Number (001-02451-000) | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | $27,700 | **520. TOTAL REDUCTION AMOUNT DUE TO SEL** | $27,700 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | $27,700.00 | 601. Gross amount due to seller (line 420) | $27,700.00 |
| 302. Less amounts paid by/for borrower (line 220) | $27,700 | 602. Less reductions in amt due to seller (line 520) | $27,700 |
| 303. CASH ( x FROM) ( TO) BORROWER | | 603. CASH ( X TO) ( FROM) SELLER | $0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return, for other transactions, complete the applicable parts of Form 4797. Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN#                     Signature     CastleRock 2017 LLC
Victor Naar, Manager

| 700. TOTAL COMMISSION BASED ON $ | | Division of commission (line 700) as follows: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| price $ | @ | %=$ | $0.00 | | |
| 701. $ | | to | | | |
| 702. $ | | to | | | |
| 703. | | | | | |
| 704. | | | | | |
| **800.  ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801.  Loan origination fee | | % | | 0.00 | |
| 802.  Loan discount | | % | | | |
| 803.  Appraisal fee | | to | | | |
| 804.  Credit report | | to | | | |
| 805.  Lender's inspection fee | | | | | |
| 806.  Mortgage insurance application fee to | | | | | |
| 807.  Assumption fee | | | | | |
| 808. | | | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811.  Administration Fee to | | | | | |
| **900.  ITEMS REQUIRED BY LENDER TO BE PAID ADVANCE** | | | | | |
| 901.  Interest from | | to | @$ | /day | |
| 902.  Mortgage insurance premium for | | months to | | | |
| 903.  Hazard insurance premium for | | years to | | | |
| 904. | | years to | | | |
| 905. | | | | | |
| **1000.  RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001.  Hazard insurance | | months @ $ | per month | | |
| 1002.  Mortgage insurance | | months @ $ | per month | | |
| 1003.  City property taxes | | months @ $ | per month | | |
| 1004.  County property taxes | | months @ $ | per month | | |
| 1005.  Annual assessments | | months @ $ | per month | | |
| 1006. | | months @ $ | per month | | |
| 1007. | | months @ $ | per month | | |
| 1008. | | months @ $ | per month | | |
| **1100.  TITLE CHARGES** | | | | | |
| 1101.  Settlement or closing fee | to | | | | 0.00 |
| 1102.  Abstract or title search | to | | | | 0.00 |
| 1103.  Title examination | to | | | | 0.00 |
| 1104.  Title insurance binder | to | | | | 0.00 |
| 1105.  Document preparation | to | | | | 0.00 |
| 1106.  Notary fees | to | | | | |
| 1107.  Attorney's fees | to | | | | |
| (includes above items numbers:) | | | | | |
| 1108.  Title insurance $ | 0.00 to  Crawford County Abstract | | | | |
| (includes above items numbers:) | | | | | |
| 1109.  Lender's coverage | $ | | | | |
| 1110.  Owner's coverage | $ | | | | |
| 1111.  Tax Certificate Fee | | | | | |
| 1112.  Administration Fee | $ | | | | |
| 1113.       Sales tax | | | | | |
| **1200.  GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201.  Recording fees: Deed | ;Mortgage $0.00 | ;Releases $ | | | |
| 1202.  City/county tax/stamps: Deed $0.00 | | ;Mortgage $ | | | |
| 1203.  State tax/stamps:         Deed | | ;Mortgage $ | | | |
| 1204.  Security Agreement (Mobile Home) | | | | | |
| 1205. | | | | | |
| **1300.  ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301.  Survey to | | | | | |
| 1302.  Pest inspection to | | | | | |
| 1303.  Hazard Insurance | | | | | |
| 1304. | | | | | |
| 1305. | | | | | |
| 1306. | | | | | |
| **1400.  TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K)** | | | | 0.00 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____
**Cornelius Stephens**

Seller: _____
**CastleRock 2017 LLC**
**Victor Naar, Manager**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent _____     Date _____

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.

For details see:  Title 18 U.S. Code Section 1001 and 1010

GOOD FAITH ESTIMATE

| Applicants: | **Cornelius Stephens** | Prepared By: CastleRock 2017 LLC |
|---|---|---|
| | | 333 Westchester Ave, West Building Suite W2100, White Plains, NY 10604 |
| Property Address: | **33 Main St, Pennsville, NJ 08070** | |

Application No: _____   Date Prepared: _____

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement

Total Loan Amount $   **$26,500.00** Interest Rate:   **9.900%**  Term:   **240** months      MIP/FF Financed $ _____

| 800. ITEMS PAYABLE IN CONFLICTION WITH LOAN | |
|---|---|
| 801. Loan Origination Fee | |
| 802. Loan Discount | |
| 803. Appraisal Fee | |
| 804. Credit Report | |
| 805. Lender's Inspection Fee | |
| 806. Mortgage Broker Fee | |
| 807. Tax Related Service Fee | |
| 808. Processing Fee | |
| 809. Underwriting Fee | |
| 810. Wire Transfer Fee | |
| 811. Administration Fee | $0.00 |
| 812. | |

| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
|---|---|
| 901. Interest for          days @ $          per day | |
| 902. Mortgage Insurance Premium | |
| 903. Hazard Insurance Premium | |
| 904. Tax and Assessment | |
| 905. VA Funding Fee | |

| 1000. RESERVES DEPOSITED WITH LENDER: | |
|---|---|
| 1001. Hazard Insurance Premiums      months@$          per month | |
| 1002. Mortgage Ins. Premium Reserves  months@$          per month | |
| 1003. Taxes and Assessment Reserves  months@$          per month | |

| 1100. TITLE CHARGES: | |
|---|---|
| 1101. Closing or Escrow Fee: | |
| 1102. Document Preperation Fee | |
| 1103. Notary Fees | |
| 1104. Attorney Fees | $0.00 |
| 1105. Title Insurance | |

| 1200. GOVERNMENT RECORDING & TRANSFER CHARGES: | |
|---|---|
| 1201. Recording Fees: | $0.00 |
| 1202. City/County Tax/Stamps: | 0 |
| 1203. State Tax/Stamps: | |

| 1300. ADDITIONAL SETTLEMENT CHARGES: | |
|---|---|
| 1301. | $ |
| 1302. Pest Inspection | |
| 1303. Hazard Insurance | |

TOTAL ESTIMATED SETTLEMENT CHARGES:

COMPENSATION TO BROKER (Not Paid Out of Loan Proceeds):      $0.00

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|
| Purchase Price/Payoff | | Principal & Interest | $253.98 |
| Loan Amount | $26,500.00 | Other Financing (P & I) | |
| Est. Closing Costs | $0.00 | Hazard Insurance | $30.00 |
| Est. Prepaid Items/Reserv | $1,200.00 | Real Estate Taxes | $505.78 |
| Amount Paid by Seller | $0.00 | Mortgage Insurance | |
| | | Homeowners Assn. Dues | |

| Total Est. Funds Needed to Close | $0.00 | Total Monthly Payments | $789.76 |
|---|---|---|---|

This Good Faith Estimate is being provided by American Equity Funding, Inc , a mortgage broker, and no lender has been obtained. A lender will provide you with an additional Good Faith Estimate within three days of the receipt of your loan application.

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as ammended (RESPA). Additional information can be found in the HUD Special Information Booklet which is to provided to you by your mortgage broker or lender. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

_Cornelius Stephens_   7-24-18

Cornelius Stephens      Date

# Equal Credit Opportunity Act

**Property Address:**    33 Main St, Pennsville, NJ 08070

The Federal Opportunity Act Prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this company is the Federal Trade Commission.

We are required to disclose to you that you need not disclose income from alimony, child support, or separate maintenance payment if you choose not to do so.

Having made this disclosure to you, we are permitted to require if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are so relying to qualify for the loan for which you are applying.

**Cornelius Stephens**                     **(Date)**